UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEW YORK LIFE INSURANCE CO., <br><br>　　　　　Interpleader Plaintiff, <br><br>　　v. <br><br>LINDA TURNER and CHRISTINE L. MOWER, <br><br>　　　　　Interpleader Defendants. | CASE NO. C13-0473JLR <br><br> ORDER STAYING LITIGATION AND COMPELLING ARBITRATION |

## I.  INTRODUCTION

This matter comes before the court on Interpleader Defendant Linda Turner's motion for summary judgment against Interpleader Defendant Christine L. Mower. (Mot. (Dkt. # 24).) Ms. Mower responds in part that the dispute between the two Interpleader Defendants is subject to mandatory "mediation/arbitration" under the postnuptial

ORDER- 1

agreement signed by Dana Mower and Christine Mower.[1]  (Resp. (Dkt. # 29) at 2-3, 8.)  Having considered the submissions of the parties, the balance of the record, and the relevant law, and no party having requested oral argument, the court DENIES Ms. Turner's motion, STAYS the litigation, and ORDERS the Interpleader Defendants to submit to mediation (and, if necessary, arbitration) in accordance with the postnuptial agreement.

## II.   FACTS

### A.   The Postnuptial Agreement

On August 13, 2012, in preparation for the dissolution of their marriage, Christine Mower and Dana Mower entered into a postnuptial agreement ("the Agreement") dividing their assets.  (*See generally* Agreement (Dkt. # 31-1).)  Under the Agreement, Dana received certain real property known as "Smuggler's Cove."  (Agreement ¶ 4.8.3.)  Both Dana and Christine were named on the home equity loan ("the Loan") secured by Smuggler's Cove.  (*See id.*)   The Agreement required Dana to maintain a $1,000,000.00 life insurance policy ("the Policy") with Christine named as the sole beneficiary until either Christine was removed from the Loan or the Loan was paid in full.  (Agreement ¶ 4.8.8.1)

Accordingly, Dana named Christine as the beneficiary on a life insurance policy issued by Interpleader Plaintiff New York Life Insurance Company ("New York Life").  (Compl. (Dkt. # 1) ¶¶ 9, 12, 14.)  Dana died on November 28, 2012.  (Mower Decl. (Dkt.

---

[1] For clarity, the court refers to Dana Mower and Christine Mower by their first names.

# 31) ¶ 2.) As of the date of Dana's death, the Loan had not been repaid and Christine had not been removed from the Loan. (*Id.* ¶ 4.)

Christine submitted a claim to New York Life under the Policy, but attorneys for Dana's estate instructed New York Life not to distribute any funds to Christine. (Compl. ¶¶ 17, 18, 19.) Faced with adverse claimants to the Policy, New York Life filed this action in interpleader and deposited the funds in the court's registry. (*See* Stip. Order (Dkt. # 20) (depositing funds in registry and discharging New York Life from liability with respect to the Policy).)

**B.     The Mediation/Arbitration Clause**

Linda Turner, personal representative of Dana's estate ("the Estate"), now brings a motion for summary judgment. (*See generally* Mot.) The Estate argues, among other things, that the Estate—not Christine—is entitled to the proceeds of the Policy because the plain language of the Agreement shows that Dana and Christine intended for the Policy to be used to pay off the Loan on Smuggler's Cove. Christine responds, in part, that this dispute is subject to the "mandatory mediation/arbitration clause" in the Agreement. (Resp. at 3, 7, 8.)

The arbitration clause of the Agreement provides:

> All disputes concerning, involving, or otherwise arising in connection with this Postnuptial Agreement and/or the implementation or enforcement thereof, . . . including without limitation any challenge the validity and/or enforcement of this Agreement . . . shall be resolved in mediation/binding arbitration per RCW 7.04A, to be conducted in Seattle, King County, Washington.

(Agreement ¶ 16.1.) The clause also specifies that:

ORDER- 3

> The parties shall first attempt mediation, but if mediation fails on or before the time set by the Mediator/Arbitrator, all issues presented for mediation/arbitration shall immediately proceed to binding arbitration.

(*Id.*)  The Agreement also sets forth the procedures for selecting a mediator/arbitrator and for presenting testimony.  (*Id.* ¶¶ 16.1-4.)

The Estate responds that it "does not object to submitting this matter to binding arbitration."  (Reply (Dkt. # 33) at 10-11.)  In fact, the Estate previously offered to engage in arbitration to resolve the dispute.  (Morgan Dec. (Dkt. # 34) ¶ 3; *id.* Ex. B (Arb. Emails) at 2-4.)  For her part, Christine previously offered, pursuant to the terms of the Agreement, to engage in mediation before proceeding to arbitration.  (Arb. Emails at 5, 6.)  The Estate, however, refused—and continues to refuse—to undergo mediation.  (Morgan Dec. Ex. B at 6-7.)  Accordingly, the Estate requests that the court order the parties to skip mediation and to immediately engage in binding arbitration.  (Reply at 11.)  The Estate also requests that the court adopt the Estate's proposals concerning how the arbitration should proceed.  (*Id.*; *see also* Arb. Emails at 2-4.)

### III.   ANALYSIS

**A.   Applicable Law**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* creates a body of federal substantive law of arbitrability that applies to "a written provision in . . . a contract evidencing a transaction involving commerce."  9 U.S.C. § 2; *see Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983).  The Supreme Court has held that "the word 'involving,' like 'affecting,' signals an intent to exercise

ORDER- 4

1  Congress' commerce power to the full." *Allied-Bruce Terminix Companies, Inc. v.
2  Dobson*, 513 U.S. 265, 277 (1995).  As a result, "it is perfectly clear that the FAA
3  encompasses a wider range of transactions than those actually 'in commerce'—that is
4  'within the flow of interstate commerce.'" *The Citizens Bank v. Alafabco, Inc.,* 539 U.S.
5  52, 56 (2003).  Specifically, the FAA applies "in individual cases without showing any
6  specific effect upon interstate commerce if in the aggregate the economic activity in
7  question would represent a general practice subject to federal control." *Id.*

8         Here, the Agreement required Dana to obtain a life insurance policy naming
9  Christine Mower as the beneficiary.  (Agreement ¶ 4.8.8.1.)   Dana obtained this policy
10 from New York Life Insurance, a corporation with its principal place of business in the
11 state of New York.  (Compl. ¶ 1.)  Therefore, the Agreement evidences a transaction
12 "involving" interstate commerce.  *See Alafabco,* 539 U.S. at 56 (stating that the FAA
13 governs as long as "the transaction in fact involves interstate commerce, even if the
14 parties did not contemplate an interstate commerce connection").  Because the purchase
15 of life insurance from an out-of-state provider "in the aggregate . . . would represent a
16 general practice subject to federal control," the FAA presumptively applies.  *Id.*

17        Contracting parties, however, have the power to agree that non-federal arbitrability
18 law should be applied to interpret an arbitration agreement. *Cape Flattery Ltd. v. Titan
19 Mar., LLC*, 647 F.3d 914, 919 (9th Cir. 2011).  To rebut the presumption that federal law
20 applies, parties must present "clear and unmistakable evidence" that they agreed to apply
21 non-federal arbitrability law.  *Id.* at 921.  A general choice of law provision is not
22 sufficient.  *See Chiron v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130-31 (9th Cir.

2000) (applying federal arbitrability law despite state choice of law provision in contract); *Freaner v. Valle*, No. 11CV1819 JLS MDD, 2011 WL 5596919, at *4 (S.D. Cal. Nov. 17, 2011) (same).

The fact that the Agreement's arbitration provision references Washington's Uniform Arbitration Act, RCW 7.04A, is also insufficient. In *Cape Flattery*, the Ninth Circuit held that a contract that provided that "[a]ny dispute arising under this Agreement shall be settled by arbitration in London, England, in accordance with the English Arbitration Act 1996" only evidenced an intent for English arbitration law to apply to disputes subject to arbitration—not to decide which disputes were subject to arbitration in the first place. 647 F.3d at 921. The Mower's Agreement states that: "[a]ll disputes . . . shall be resolved in mediation / binding arbitration per RCW 7.04A, to be conducted in Seattle, King County, Washington." (Agreement ¶ 16.1.) The court can discern no appreciable difference between this language and the language at issue in *Cape Flattery*. As in *Cape Flattery*, this provision explains that Washington arbitration law applies to disputes subject to arbitration, but does not constitute "clear and unmistakable evidence" that the parties intended for Washington law to apply to questions of arbitrability. Consequently, federal arbitrability law applies.

**B.  Federal Arbitration Act**

The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the

parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (emphasis in original); *see also* 9 U.S.C. § 4. "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000). If a dispute is subject to arbitration, the FAA directs a district court to "stay the trial in the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

Here, the Interpleader Defendants do not dispute that the arbitration provision in the Agreement is valid. (Resp. at 29 (moving to compel arbitration); Reply at 10 (agreeing, in the alternative, that the court "should order the parties to engage in binding arbitration").) Neither do they raise any grounds at law or in equity for the revocation of the arbitration provision. (*See generally* Resp.; Reply.)

Furthermore, the Interpleader Defendants appear to agree that the arbitration provision encompasses their dispute over which party is entitled to the proceeds from the Policy. (*See* Resp. at 29; Reply at 10.) Even if the Interpleader Defendants did not agree, the arbitration provision applies to "[a]ll disputes concerning, involving, or otherwise arising in connection with" the Agreement. (Agreement ¶ 16.1) Courts give the language "arising in connection with" an arbitration agreement the broadest possible interpretation: "the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720-21 (9th

ORDER- 7

1 Cir. 1999). The Interpleader Defendants' dispute easily meets this standard. After all,
2 both Interpleader Defendants' claims to the Policy proceeds are predicated on
3 interpretation of the Agreement itself. (*See* Mot. at 6-10; Resp. at 8-12.)

4   Regarding the Estate's request that the Interpleader Defendants skip mediation and
5 adopt the Estate's proposed arbitration procedure, the Estate provides no basis in law as
6 to why the court should require the Interpleader Defendants to deviate from the plain
7 terms of their Agreement. Because the Interpleader Defendants' do not dispute that the
8 arbitration provision is valid, and because the arbitration provision encompasses their
9 conflict over the Policy proceeds, Section 4 of the FAA mandates that the court order the
10 Interpleader Defendants proceed pursuant to the terms of the Agreement. *See Dean*
11 *Witter Reynolds,* 470 U.S. at 218; 9 U.S.C. § 4 ("[T]he court shall make an order for
12 directing the parties to proceed to arbitration in accordance with the terms of the
13 agreement.")

14   The fact that this litigation was initiated by Interpleader Plaintiff New York Life,
15 who is not a party to the Agreement, raises no difficulty. Under the FAA,
16 "an arbitration agreement must be enforced notwithstanding the presence of other persons
17 who are parties to the underlying dispute but not to the arbitration agreement." *Moses H.*
18 *Cone Mem'l Hosp.,* 460 U.S. at 20. "In some cases, of course, it may be advisable to stay
19 litigation among the non-arbitrating parties pending the outcome of the arbitration. That
20 decision is one left to the district court . . . as a matter of its discretion to control its
21 docket." *Id.* at n. 23; *see also Landis v. North American Co.*,299 U.S. 248, 254-55 (1936)
22 ("The trial court possesses the inherent power to control its own docket and calendar.");

ORDER- 8

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, . . . enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.  This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character.")

In accordance with the preceding authority, the court exercises its discretion to stay this action while the Interpleader Defendants arbitrate their respective claims under the Policy.  *See, e.g.*, *Tech. & Intellectual Prop. Strategies Grp. PC v. Insperity, Inc.*, No.12-CV-03163-LHK, 2012 WL 6001098, at *13 (N.D. Cal. Nov. 29, 2012) (staying claims against a non-arbitrating party pending the outcome of the other parties' arbitration).  Such a solution will not prejudice New York Life because New York Life makes no claim to the disputed funds and, having interpleaded the funds into the court registry, now retains little interest in the outcome of the Interpleader Defendants' dispute.  (*See* Stip. Order (depositing funds and discharging New York Life from liability regarding the Policy).)  Once a disposition in arbitration is reached, the court may apply this disposition to the Policy proceeds in the court registry and can adjudicate any remaining issues that fall outside the scope of the arbitration clause.  *See Mediterranean Enterprises*, 708 F.2d at 1465.  To that end, the Interpleader Defendants shall submit a joint status report within 10 days of any determination by the mediator/arbitrator regarding entitlement to the Policy.

### IV.  CONCLUSION

For the foregoing reasons, the court DENIES the Estate's motion for summary judgment (Dkt. # 24), STAYS the action, and ORDERS the Interpleader Defendants to

1 undertake mediation, and, if necessary, arbitration, pursuant to the terms of the
2 Agreement.  The Interpleader Defendants shall begin mediation within 20 days of the
3 date of this order.

4       Dated this 16th day of December, 2013.

 

                                        /s/ James L. Robart
                                        JAMES L. ROBART
                                        United States District Judge